

FILED & JUDGMENT ENTERED

Christine F. Winchester

August  8  2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
Ashley Austin Edwards
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re:<br><br>**Brandi Stone,**<br><br>                Debtor. | Case No. 25-30279<br>Chapter 7 |
| **Brandi Stone,**<br><br>                Plaintiff,<br><br>v.<br><br>**Missouri Higher Education Loan Authority (MOHELA)** and the **United States Department of Education,**<br><br>                Defendants. | Adv. Proc. No. 25-03014 |
| **Brandi Stone,**<br><br>                Plaintiff,<br><br>v.<br><br>**United States of America (Internal Revenue Service),**<br><br>                Defendant. | Adv. Proc. No. 25-03016 |

## <u>OPINION AND ORDER GRANTING MOTIONS TO DISMISS</u>

These matters are before the Court upon (a) the *Motion to Dismiss* filed by the United States of America on behalf of the United States Department of Education on June 5, 2025, in this bankruptcy case (#25-30279) (the "<u>Base Case</u>"); [D.I. 29]; (b) the *Motion to Dismiss* filed by the United States of America on behalf of the United States Department of Education on June 5, 2025, in the above-captioned adversary proceeding (#25-03014) (the "<u>Student Loans A.P.</u>"); [D.I. 11]; and (c) the *United States' Motion to Dismiss* filed by the United States of America on behalf of the Internal Revenue Service (the "<u>IRS</u>") on June 11, 2025, in the above-captioned adversary proceeding (#25-03016) (the "<u>Taxes A.P.</u>," and together with the Student Loans A.P., the "<u>Adversary Proceedings</u>"). [D.I. 6].

The Court held a hearing on these three motions (the "<u>Motions</u>") on July 21, 2025 (the "<u>Hearing</u>"). At the Hearing, the Debtor appeared on behalf of herself; Heather W. Culp appeared on behalf of the United States Bankruptcy Administrator for the Western District of North Carolina (the "<u>Bankruptcy Administrator</u>"); Anna A. Miller appeared on behalf of the United States of America (representing the IRS); and Jonathan M. Warren appeared on behalf of the United States of America (representing the United States Department of Education). The Court took the Motions under advisement and now renders its opinion. For the reasons set forth below, the Motions are **GRANTED**.

## BACKGROUND AND FINDINGS OF FACT

### I.   <u>The Base Bankruptcy Case</u>

On March 24, 2025 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code (the "<u>Petition</u>"). [D.I. 1]. The Debtor is the sole member of her household, works as a licensed clinical social worker, and has primarily consumer debts. [D.I. 1 at 37–39]. The Debtor owns two luxury vehicles and rents a condominium near the top of a 42-

story high rise in the heart of Charlotte, North Carolina. *Id.* The Debtor originally reported that her monthly expenses totaled $4,922, including $2,491 in rent and $1,379 in car payments ($884 for a BMW and $495 for a Lexus).[1] *Id.* However, the Debtor also indicated that she intends to surrender her two vehicles. [*Id.* at 56].

In response to the motion to dismiss the Base Case, which raised concerns about the Debtor's high-cost apartment, the Debtor asserted that she moved into the apartment with her ex-partner who agreed to help pay for rent. [D.I. 30 at 2]. However, the Debtor alleged that the relationship ended due to abuse by her ex-partner and that she was left with the lease and no viable option to relocate due to financial barriers. *Id.* The Debtor asserts that she moved into the apartment in 2020 and that her ex-partner stopped offering financial assistance halfway through that year. The Debtor continued to live in the apartment alone for the next 5 years.

The original schedules and statements filed by the Debtor did not accurately reflect her true financial condition. Specifically, the Debtor underreported her combined monthly income ("Petition Date Income")[2] and her current monthly income ("6-Month Average Income"),[3] failed to disclose significant business-related income and property, and failed to list certain creditors.

In her original Schedule I, the Debtor reported $4,423.06 as her monthly gross wages, $378.16 in payroll deductions, and $4,044.90 as her Petition Date Income. [D.I. 1 at 35–36]. Although the Debtor operated a business on the Petition Date, the Debtor did not report any income from operating a business or attach a statement showing gross receipts, ordinary and

---

[1] The Debtor filed amended documents on April 28, 2025, in which she reported that her monthly expenses totaled $5,030 but did not include an amended Schedule J outlining the changes in her expenses. [D.I. 28 at 1].

[2] Petition Date Income is the debtor's post tax income as of the petition date. It is reported on line 12 of Schedule I and is calculated by taking the debtor's estimated monthly gross wages (line 4), subtracting any payroll deductions (line 6), and adding any additional sources of income, including net income from operating a business (line 8a).

[3] 6-Month Average Income is the average monthly income that the debtor received during the six full months preceding the petition date. It is reported on line 11 of Official Form 122A-1 and is calculated by taking the debtor's average gross wages (line 2) and adding any additional sources of income, including net income from operating a business (line 5).

necessary business expenses, or the total monthly net income from a business as is required by the Bankruptcy Code and several Official Bankruptcy Forms.

In the Debtor's original filed version of Official Form 122A-1 (titled "Chapter 7 Statement of Your Current Monthly Income"), the Debtor listed $4,423.06 as her 6-Month Average Income. [*Id.* at 40–41]. Again, the Debtor failed to report any information regarding net income from operating a business as is required. Part 2 of Form 122A-1 prompts a debtor to "Determine Whether the Means Test Applies to You" by comparing a debtor's annual income (the 6-Month Average Income multiplied by 12) to the median family income for their state and size of household. The Debtor calculated her annual income as $53,076.72 but did not include, or compare it to, the applicable median income in the state of North Carolina. [*Id.* at 41–42].

In the original Schedule A/B (titled "Assets — Real and Personal Property"), the Debtor answered "No" in response to the following question: "Do you own or have any legal or equitable interest in any business related property?" [*Id.* at 20]. In the Debtor's original *Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Bankruptcy Form 107) ("SOFA"), the Debtor answered "Yes" in response to the following question: "Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?" [Id. at 54]. The Debtor then disclosed her interest in QC Counseling Services LLC ("QC Counseling") and noted that the business existed from January 18, 2018, to February 11, 2025 (about a month before the Petition Date). *Id.* In what became an inexplicable contradiction, the Debtor answered "No" to the following question on the same form: "Did you have any income from employment or from operating a business during this year or the two previous calendar years?" [*Id.* at 45].

On March 27, 2025, the Debtor amended Official Form 122A-1 to include a means test

calculation, in which she (1) reported that the applicable median family income for her state and size of household was $63,611.00, (2) compared that number to her reported annual income of $53,076.72, and (3) checked the box to indicate that there was no presumption of abuse.[4] [D.I. 15]. *Id.* However, the Debtor again failed to disclose any information about net income from operating a business.

In mid-April 2025, the Administrative Office of the United States Courts randomly selected the Debtor's bankruptcy case for audit. Shortly thereafter, on April 28, 2025, the Debtor filed several amended schedules and statements. [D.I. 28]. The amended documents provided more information about income generated from QC Counseling and property held by the QC Counseling. *Id.* The Debtor also disclosed an additional creditor. *Id.* However, the Debtor still did not accurately describe her Petition Date Income or her 6-Month Average Income and failed to disclose any other businesses in which the Debtor had an interest.[5]

The amended Schedule A/B disclosed for the first time that the Debtor owned business-related property: (1) $9,450 in "monies" and (2) a printer and computer collectively worth $1,290. [*Id.* at 12]. The Debtor amended SOFA to include gross business income ($0 in 2023; $9,000 in 2024; and $12,574.06 from January 1, 2025, through the Petition Date) and that QC Counseling existed from January 18, 2018, to March 25, 2025 (the day after the Petition Date), rather than stating that it ceased to exist on February 11, 2025, as the Debtor previously reported. [*See id.* at 29, 38]. Finally, the Debtor amended Schedule E/F to include the United States Small Business Administration as a creditor with a debt of $27,500. [*Id.* at 23].

The Bankruptcy Administrator asked the Debtor to provide the auditor with a copy of her

---

[4] Line 14 of Form 122A-1 explains that if line 12b (the debtor's annual income) is less than or equal to line 13 (the applicable median income), there is no presumption of abuse. If line 12 b is greater than line 13, the debtor is prompted to fill out Form 122A-2.

[5] As is evident later in this opinion, the Debtor had an interest in several other businesses.

paystubs or other evidence of payment from all employers for the six-month period preceding the Petition Date (September 2024 – February 2025, the "6-Month Lookback Period") plus the paystubs and other evidence of payment received in the calendar month in which the Petition was filed (March 2025). Thereafter, the Debtor provided evidence of gross employment wages of $28,749.89 during the 6-Month Lookback Period, which calculate as a monthly average of $4,791.65 (not $4,423.06 as she reported on her Schedule I). The Bankruptcy Administrator asked the Debtor to provide a copy of evidence of any self-employment income received during the same period. The Debtor provided evidence of gross profit of $19,014.79 from QC Counseling during the 6-Month Lookback Period, which calculate as a monthly average of $3,169.13.

The auditor filed the Report of Debtor Audit (the "Audit Report") on June 13, 2025, which identifies two material misstatements. [D.I. 32]. First, the auditors determined that the Debtor understated her 6-Month Average Income by $3,537.72, compared to what she reported on Form 122A-1. [*Id.* at 3]. Second, the auditors determined that the Debtor understated her Petition Date Income by $2,688.96, compared to what she reported on Schedule I. *Id.* When Form 122A-1 is corrected to reflect the 6-Month Average Income of $7,960.78, the presumption of abuse arises and must be reported on Form 122A-2, which the Debtor did not complete. Specifically, the form shows that her monthly disposable income for 60 months is $232,675.80.

In her response to the motion to dismiss the Base Case, the Debtor noted that (1) her income was modest and inconsistent since it was based entirely on fluctuating contracts, (2) she was in the process of formally closing QC Counseling, and (3) she would rely solely on her taxed employment income going forward. [D.I. 30]. Presumably, the Debtor included this to explain why she did not include the QC Counseling income in her Petition Date Income or 6-Month Average Income calculations. The Debtor also argued that she listed the company in good faith

and was willing to amend her filings to accurately reflect her income. *Id.* At the Hearing on the

Motions, Mr. Warren asked the Debtor how many businesses she owned. The Debtor testified

that she had eight or nine LLCs. However, the Debtor clarified that this number included "inactive

businesses" that she started and has since closed.

## II.  The Student Loans A.P.

On April 1, 2025, the Debtor filed the Student Loans A.P., seeking to discharge her

student loan debt pursuant to 11 U.S.C. § 523(a)(8)[6] and alleging that repayment in full would

impose an undue hardship on her. [Student Loans A.P., D.I. 1]. The Debtor incurred

approximately $104,867.77 in student loan debt in obtaining a Master of Social Work degree.

[Student Loans A.P., D.I. 11 at 8–9]. The Debtor's student loans require a monthly payment of

$314.98 and are set to be repaid in full by April 2040. [Student Loans A.P., D.I. 11 at 9]. Since

earning her degree in August 2015, the Debtor has made a total of $855.92 in payments. [Student

Loans A.P., D.I. 11 at 9, 19].

On April 10, 2025, the Debtor signed the *Attestation of Brandi Stone in Support of Request*

*for Stipulation Conceding Dischargeability of Student Loans* (the "Attestation"). [Student Loans

A.P., D.I. 11 at 7–21]. In the Attestation, the Debtor asserted that her expenses exceed the IRS's

allowable standards in four out of five categories (housekeeping supplies, apparel and services,

personal care products and services, and miscellaneous expenses)[7] without explaining why or by

how much, despite the Attestation form specifically requiring that an explanation be provided.

[Student Loans A.P., D.I. 11 at 11–12]. The Debtor asserted in the Attestation that her total

expenses[8] exceeded $808 per month. [Student Loans A.P., D.I. 11 at 11]. Pursuant to the

---

[6]  Subsequent statutory references in this order are to Title 11 unless otherwise indicated.
[7]  The Attestation indicated that the Debtor's "expenses for food" do not exceed the IRS allowable standard. [D.I. 11 at 11].
[8]   The Attestation calculates total expenses by adding up expenses for food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous expenses. [*See id.* at 11–12].

Attestation, the Debtor's monthly expenses are at least $5,648[9]—an increase of $4,922 from what she originally reported in the Petition, as well as an increase from the $5,030 she reported on April 24, 2025. [D.I. 28 at 1].

The complaint in the Student Loans A.P. provides that the Debtor has made a good faith effort to repay the student loans, but despite these efforts, she is unable to maintain a minimal standard of living while repaying the loans. [Student Loans A.P., D.I. 1 at 4]. The Debtor explains that she currently works full time earning approximately $3,548.52 per month, and, after her essential living expenses of approximately $3,500 per month, she has no discretionary income to cover the student loan obligations. [Student Loans A.P., D.I. 1 at 4]. This, of course, directly contradicts the findings of the Administrative Office of the United States Courts in the Audit Report. [*See* D.I. 32]. Despite her advanced education and professional degree, the Debtor explains that she has certain conditions that limit her earning potential, making it unlikely that her financial situation will improve significantly in the foreseeable future. [*See* Student Loans A.P., D.I. 1 at 5].

## III. The Taxes A.P.

The Debtor filed the Taxes A.P. on April 4, 2025, seeking to discharge approximately $29,177.79 in federal income taxes owed for the years of 2021 through 2023. [Taxes A.P., D.I. 1]. While the Debtor acknowledges that the debt does not qualify for automatic discharge under section 523(a)(1), she requests equitable relief pursuant to section 105(a).[10] [Taxes A.P., D.I. 1]. The Debtor contends that repayment would create an undue hardship, the same reason she argues

---

[9]  This total figure was reached by adding together the following amounts from the Attestation: at least $808 (living expenses) + $2,491 (rent) + $120 (renter's insurance) + $240 (utilities) + $884 (BMW car payment) + $495 (Lexus car payment) + $310 (vehicle operating costs) + $300 (health insurance).

[10] This section of the Bankruptcy Code provides, in part, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

her student loan obligations should be discharged. [Taxes A.P., D.I. 1]. At the Hearing, Ms. Miller

argued that the tax debt is not dischargeable, even through section 105(a). The Debtor replied, "If

no relief is available, I don't want to question that or challenge that." However, when the Court

asked if the Debtor was withdrawing her response, she said that she was not.

## DISCUSSION

### I. Presumption of Abuse in the Base Case

Section 707 of the Bankruptcy Code provides that, "[a]fter notice and a hearing, the

court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are

primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the

provisions of this chapter." 11 U.S.C. § 707(b)(1). That same section provides that "the court

shall presume abuse exists if the debtor's current monthly income reduced by [certain]

amounts . . . and multiplied by 60 is not less than the lesser of (I) 25 percent of the debtor's

nonpriority unsecured claims in the case, or $6,000, whichever is greater; or (II) $10,000" (the

"Means Test"). *Id.* § 707(b)(2)(A)(i). Pursuant to section 104 of the Bankruptcy Code, the

Judicial Conference of the United States published a notice that amended the $10,000 figure in

11 U.S.C. § 707(b)(2)(A)(i)(II) to be $17,150. Adjustment of Certain Dollar Amounts Applicable

to Bankruptcy Cases, 90 Fed. Reg. 8941, 8941 (Feb. 4, 2025).

The figures originally reported by the Debtor in her schedules and statements did not give

rise to the presumption of abuse. However, the presumption of abuse arises when the Debtor's

income is corrected to reflect her income as calculated in the Audit Report. Specifically, when

Form 122A-1 is corrected to reflect 6-Month Average Income of $7,960.78, the presumption of

abuse arises. Similarly, upon completion of Form 122A-2 (which the Debtor was required to

complete but did not) using the information in the Debtor's schedules and statements as most

recently amended, the presumption of abuse arises. That form shows that the Debtor's monthly

disposable income for 60 months is $232,675.80, which is greater than the $17,150 in the Means Test.

## II.  Dismissal for Failure to Rebut the Presumption of Abuse

Once the presumption of abuse arises, section 707 of the Bankruptcy Code provides that the presumption "may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces . . . that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i). While "the Bankruptcy Code does not provide a definition of 'special circumstances[,]'" the two examples that section 707(b)(2) provides are "instructive of the kinds of 'special circumstances' that would justify" finding that a debtor has overcome the presumption of abuse. *See Robbins v. Alther (In re Alther)*, 537 B.R. 262, 266 (Bankr. W.D. Va. 2015) (citation omitted). As one of our sister courts in the Fourth Circuit observed, "the similarity in nature of the two examples is that they are life circumstances that directly and unavoidably affect one's earning capacity or give rise to necessary, additional expenses." *Id.* (citation omitted).

"In order to establish special circumstances," a debtor must "itemize each additional expense or adjustment of income and . . . provide (I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." 11 U.S.C. § 707(b)(2)(B)(ii). In other words, "debtors must demonstrate not simply special circumstances but special circumstances which result in an adjustment to the current monthly income calculation so that, taking into account the special circumstances adjustment, the debtors' net income does not exceed the statutory thresholds which gave rise to the initial presumption of abuse." *Alther*, 537 B.R. at 267.

In her filings and at the Hearing, the Debtor asserted that she had special circumstances

that would overcome the presumption of abuse. The Debtor explained that she has certain mental health concerns that make it difficult for her to progress in her career, manage money, and maintain long term financial stability. [D.I. 30]. The Debtor also said that a previous relationship left her with a lease for an apartment that she could not afford on her own as well as car troubles that necessitated purchasing a second vehicle.

With supporting evidence, these conditions could theoretically qualify as "special circumstances" if the Debtor demonstrated that these circumstances directly and unavoidably affect the Debtor's earning capacity and give rise to necessary additional expenses. However, the Debtor could not demonstrate how or why these alleged "special circumstances" justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative, even when given the opportunity to do so as a witness at the Hearing on these Motions. Therefore, the Court finds that the Debtor has failed to rebut the presumption of abuse.

### III. Dismissal for Lack of Good Faith

Even if the Debtor had rebutted the presumption of abuse, it would be appropriate to dismiss this case for cause under section 707(a) of the Bankruptcy Code. Section 707(b)(3) requires a court to consider, in making a determination under section 707(a), "(A) whether the debtor filed the petition in bad faith; or (B) [whether] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." *See* 11 U.S.C. § 707(b)(3).

In a case under Chapter 7 of the Bankruptcy Code, the United States Court of Appeals for the Fourth Circuit has articulated five factors that courts must consider in the totality of the circumstances analysis set forth above:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
(5) Whether the petition was filed in good faith.

*Calhoun v. U.S. Tr.*, 650 F.3d 338, 341 n.2 (4th Cir. 2011) (citation omitted).

As to the first factor, the Debtor did not file the Petition because of sudden illness, calamity, disability, or unemployment. Instead, the Debtor asserts that she filed the Petition for several other reasons, including long-term challenges in managing personal affairs, growing up in poverty, irregular LLC income, and the loss of a former partner's contributions to household expenses. [D.I. 30]. As to the second factor, some evidence showed that the Debtor made consumer purchases in excess of her ability to repay, including her testimony that she spent too much money on vehicles and housing (as is described in further detail below).

As to the third factor, pursuant to the Attestation, the Debtor's monthly expenses are at least $5,648 per month. The allowed monthly expense amount under IRS Standards for a family of one in Mecklenburg County, North Carolina is $3,726.[11] The Debtor's housing and transportation costs seem particularly excessive and unreasonable. She pays $2,491 in rent, $120 in renter's insurance, and $240 in utilities, for a total amount of $2,851 monthly. The allowed amount under the IRS Standards for a family of one in Mecklenburg County, North Carolina, for housing, including insurance and utilities, is $1,860 monthly. The Debtor also pays $884 for her BMW, $495 for her Lexus, and $310 in vehicle operating costs, for a total of $1,689 monthly. The national ownership cost for one car is $662 and the operating cost for one car is $281, a total of $943 monthly.

---

[11] IRS Standards are generally available at Collection Financial Standards, IRS, https://www.irs.gov/businesses/ small-businesses-self-employed/collection-financial-standards. The allowed amount under IRS Standards for a family of one in Mecklenburg County totals $3726 which is comprised of $839 (food, clothing, and other items) + $84 (total for under 65 out-of-pocket medical costs) + $1,860 (Mecklenburg County housing, including insurance and utilities) + $662 (national ownership cost for one car) + $281 (operating cost for one car in South region).

As to the fourth factor, the Debtor's original (and amended) schedules and statements do not reasonably and accurately reflect her true financial condition. As noted above, the Audit Report identified material misstatements in both the Petition Date Income and the 6-Month Average Income.

As to the fifth factor, the Debtor's actions demonstrate a lack of good faith. The Debtor has filed three complaints in this bankruptcy proceeding to discharge otherwise nondischargeable debts and has used an inaccurate budget to make her arguments. The evidence, including the Audit Report, showed that several income and expense amounts that the Debtor presented were significantly and improperly inflated or deflated. The Debtor has demonstrated a lack of good faith by using this misleading information when asking the Court to discharge debts that Congress otherwise made non-dischargeable in section 523 of the Bankruptcy Code. Therefore, at least four of the five factors weigh in favor of a finding cause and dismissing the Base Case pursuant to section 707(a) of the Bankruptcy Code.

Ultimately, based upon the correctly calculated Means Test, the presumption of abuse arose, and the Debtor did not rebut the presumption. Furthermore, after considering the totality of the circumstances, the court finds that allowing the Debtor to seek bankruptcy relief would be an abuse of the provisions of this chapter. Therefore, the motion to dismiss the Base Case is **<u>GRANTED</u>**.

IV. **<u>Student Loans Adversary Proceeding</u>**

The United States Department of Education requests that the Court dismiss the Student Loans A.P. under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. [Student Loan A.P., D.I. 11]. Section 523 of the Bankruptcy Code provides that student loan debt is not dischargeable "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11

U.S.C. § 523(a)(8). The United States Court of Appeals for the Fourth Circuit has adopted the following three-part test to show that there is an under hardship under section 523(a)(8):

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 400 (4th Cir. 2005) (quoting *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). This is known as the "*Brunner* Test." Under the *Brunner* Test, "[t]he standard of proof is preponderance of the evidence, and the debtor bears the burden of proof on all three prongs." *Dunlap v. Educ. Credit Mgmt. Corp. (In re Dunlap)*, No. 15-30795, 2016 WL 93805, at \*2 (Bankr. W.D.N.C. Jan. 6, 2016) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). The Debtor failed to satisfy any of the prongs in the *Brunner* Test.

First, the evidence showed that the Debtor has sufficient income to pay her expenses and to maintain a minimal standard of living for herself, even if forced to repay the student loans. Factoring in the Debtor's undisclosed and underreported monthly income and even accepting all of her highest reported monthly expenses, the Debtor would have excess funds to make her full monthly student loan payments. According to the Audit Report, the Petition Date Income is $6,733.86. Per the Attestation, the Debtor's monthly expenses are around $5,648 per month. Based on these figures, the Debtor has a monthly surplus of $1,085.86. Even assuming that the Debtor's expenses are somewhat higher than reported, she would almost certainly have enough excess monthly income to cover her monthly student loan payment of $314.98 in full and maintain her current lifestyle.

At the Hearing, and in her filings, the Debtor argued that QC Counseling closed and that

its income should not be included as part of her income. For the sake of argument, assuming the Debtor only makes $4,049 per month (her originally reported Petition Date Income), requiring her to make her student loan payments would still not force her below a minimum standard of living.[12] As noted above, the allowed amount under IRS Standards for a family of one in Mecklenburg County, North Carolina, is $3,726. $4,049 minus the Debtor's $314.98 student loan payment would still leave her with $3,734.02, which is enough to enjoy a minimal standard of living when considering the IRS standards.

Looking at the second prong of the *Brunner* Test, the "state of affairs" that this prong references is a debtor's inability to repay their loans while maintaining a minimal standard of living. In this case, the Debtor cannot satisfy the second prong of the *Brunner* Test because the Court found against the Debtor on the first prong of the *Brunner* Test (i.e., the Debtor can repay her student loans while maintaining a minimal standard of living).

Looking at the final prong of the *Brunner* Test, a court may find that a debtor has failed to make good faith efforts to repay their student loans when the debtor "failed to make payments . . . during a time period when their income substantially exceeded their necessary expenses." *See Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 326 (4th Cir. 2008). Here, the evidence shows that the Debtor has not made a good faith effort to repay her student loans. The Debtor owes over $104,000 and has only paid $855.92 over the course of 10 years; that is less than one percent of the amount owed on the loans. As is noted above, at least for certain periods, the Debtor's monthly net income—after all expenses were paid—exceeded her monthly student loan payment by more than three times the amount of the payment. In that

---

[12]  For the sake of clarity, the court notes that debtors are required to disclose their income as of the petition date and their average income for the 6 months preceding the income date. Therefore, the QC counseling income should and has been considered by this court.

light, the Debtor's miniscule payments over the past 10 years show that she has not made good faith efforts to repay her student loans.

Therefore, the Debtor has failed to satisfy the *Brunner* Test and has failed to state a claim showing that her student loans impose an undue hardship on herself, making them subject to discharge. For these reasons, the motion to dismiss the Student Loans A.P. is **<u>GRANTED</u>**.

## V.  <u>Tax Adversary Proceeding</u>

The IRS requests that the Court dismiss the Taxes A.P. pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, due to the Debtor's failure to state a claim upon which relief can be granted. [Taxes A.P., D.I. 6]. Section 523 of the Bankruptcy Code lists 21 separate types of debt that are excepted from discharge in bankruptcy, including certain tax liabilities. *See* 11 U.S.C. § 523(a)(1).

The Debtor acknowledged that her tax liability may be excepted from discharge and said, during the Hearing, that she did not want to challenge the tax liability if no relief was available in the Taxes A.P. The Debtor argues that the Court should "exercise its equitable powers to discharge or modify the tax debt" because she meets the criteria of the *Brunner* Test. However, the *Brunner* Test is intended to evaluate whether certain debts related to educational expenses are an undue hardship under section 523(a)(8) of the Bankruptcy Code. The *Brunner* Test does not provide a framework to analyze whether the Debtor's federal tax liabilities should be discharged under section 523(a)(1) of the Bankruptcy Code because the "undue hardship" standard does not apply to that subsection.

Additionally, the Debtor's request that the Court provide this same relief under section 105(a) of the Bankruptcy Code is not supported by the text of the statute or by relevant precedent. Section 105(a) provides,

The court may issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). As the Supreme Court has recognized, "It is hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421 (2014) (citation omitted). "Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *Id.* (quoting 11 U.S.C. § 105(a)). This Court cannot override 523(a)(1)'s exception of these tax debts from discharge. Therefore, the motion to dismiss the Taxes A.P. is **GRANTED**.


**IT IS SO ORDERED.**

**This order has been signed electronically.**      **United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of this order.**